# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CHRISTOPHER M. SWEAZEY,**

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Civil Action 2:20-cv-1883
Judge Sarah D. Morrison
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Christopher M. Sweazey ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a Period of Disability and Disability Insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 20), the Commissioner's Response in Opposition (ECF No. 22), and the administrative record (ECF No. 18). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** (ECF No. 20) and that the Commissioner's decision be **AFFIRMED**.

### I.    BACKGROUND

Plaintiff protectively filed his application under Title II of the Social Security Act for Period of Disability and Disability Insurance benefits on November 14, 2016. (R. at 164.) Plaintiff alleged a disability onset of February 25, 2016. (*Id.*) Plaintiff's application was denied initially on February 6, 2017, and upon reconsideration on June 19, 2017. (*Id.* at 67–78, 80–91.)

Plaintiff sought a hearing before an administrative law judge. (*Id*. at 108–109.) Administrative Law Judge Jeannine Lesperance (the "ALJ") held a hearing on November 13, 2018, at which Plaintiff, represented by counsel, appeared and testified. (*Id*. at 31–66.) Vocational expert Carl W. Hartung (the "VE") also appeared and testified. (*Id*.) On January 23, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 9–30.) On February 12, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id*. at 1–6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff's sole contention of error is that the ALJ erred in her consideration and weighing of the opinion rendered by Ms. Bockrath, an examining occupational therapist. (Pl.'s Statement of Errors 6–12, ECF No. 20.)

## II. THE ALJ DECISION

On January 23, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 9–30.) At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since February 25, 2016, Plaintiff's alleged disability onset date. (*Id.* at 14.) At step two, the ALJ found that Plaintiff had the severe impairments of lumbar degenerative disc disease status post lumbar surgery with residual left foot drop; obesity; and osteoarthritis of the hips. (*Id.* at 14–16.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 16–17.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> [T]he claimant has the residual function capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he could occasionally climb ramps and stairs, stoop, crouch, and balance; occasionally push/pull or operate foot controls with the lower left extremity; never kneel or crawl; never climb ladders, ropes, and scaffolds; should avoid around [*sic*] hazards such as unprotected heights or work in proximity to moving mechanical parts; and should not engage in occupational driving.

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] A claimant's RFC is an assessment of "the most he can still do despite his limitations." 20 C.F.R. § 4040.1545(a)(1).

(*Id.* at 17.) The ALJ then relied on the hearing testimony of the VE to conclude that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.* at 24–25.) She therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 25.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As set forth above, Plaintiff's sole contention of error is that the ALJ erred in her consideration and weighing of the opinion of Ms. Bockrath, an occupational therapist who examined Plaintiff on July 23, 2018, at his request "to fill out paperwork for lawyer/disability." (R. at 354.) The undersigned finds that the ALJ did not commit reversible error in connection with his consideration and weighing of Ms. Bockrath's opinions.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(b). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

Occupational therapists, like Ms. Bockrath, however, are not "acceptable medical sources" and instead fall into the category of "other sources." 20 C.F.R. §§ 404.1513(a), 416.913(a); *see also Noto v. Comm'r of Soc. Sec.,* 632 F. App'x 243, 249 (6th Cir. 2015) (noting that a physical therapist is a "non-acceptable medical source."). Although the ALJ must consider opinions from "other sources" and "generally should explain the weight given," "other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (citation omitted); 20 C.F.R. § 416.927(f)(2) (providing that the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure

5

that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . . ."). The ALJ considers "other source" opinions using the same factors for weighing a medical opinion from an acceptable medical source, but "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. § 416.927(f)(1). The relevant factors include the examining relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 416.927(c)(1)–(6).

During Ms. Bockrath's July 2018 examination, Plaintiff reported that he could sit for 2 hours per day, stand for 3 hours per day, and walk for 3 hours per day. (R. at 355.) Ms. Bockrath noted that during the examination, Plaintiff sat for 45 minutes (76% of the examination), stood for 23 minutes (23%), and walked for 2 minutes (3%). (*Id*.) Ms. Bockrath declined to perform a number of tests because Plaintiff's blood pressure was elevated, including the treadmill test, the "rapid walk" test, and the "120 second step" test. (*Id*.) Ms. Bockrath opined that Plaintiff could not walk; climb stairs; balance; climb ladders; stoop or bend; engage in back extension or trunk rotation; or engage in sustained/repetitive squatting, kneeling, and crawling. (R. at 356.) She further opined that Plaintiff could sustain only frequent neck flexion and extension; frequent pinching; frequent gripping with his left hand; occasional neck turning; occasional overhead reaching; and occasional gross motor handling. (*Id*.) Ms. Bockrath noted on a chart (without further explanation) that Plaintiff was "unable to tolerate [an] 8 [hour] shift," but then noted directly below that she was unable to challenge his endurance due to his critical

6

blood pressure and further opined that Plaintiff could perform at the sedentary physical demand level. (*Id*.) Ms. Bockrath noted that Plaintiff demonstrated 2 positive Waddell findings and noted that 3 or higher finding reflected poor reliability. She also observed that Plaintiff "still has limited potential for continued improvement as [his blood pressure] medications and pain pump dosage continues to evolve." (R. at 357.)

The ALJ considered Ms. Bockrathrath's opinions, but assigned them only "partial weight," reasoning as follows:

> Only partial weight is given to the opinion of the occupational therapist at a July 23, 2018 functional capacity evaluation (6F). This is a non-acceptable source for medical opinion evidence and a non-treating source who evaluated the claimant only once. This source found that the claimant would be able to sit for 76% of the day, which is consistent with sedentary work, and could stand 24% of the day, which is generally consistent with sedentary work (as 2 hours is 25% of an 8 hour work day). The source found walking to be more limited, but noted a significant antalgic gait even with a walking stick, which is not consistently demonstrated in the file. While at times the claimant is noted to have a slowed or antalgic gait, at other times his gait is noted to be normal and any findings of weakness appear to be generally slight with at least "good" 4/5 strength in the lower left extremity noted (*see e.g.* 5F/2–3). When seen about a month before this exam in pain management notes, the claimant had no atrophy, no spasticity, or fasciculation (which are noted to be signs of neuro compression, and are all negative). This source limits climbing stairs although the claimant admitting [*sic*] to having the ability to do so many times in a single day (20–25 times a day climbing 12–14 steps from his basement bedroom). This source limits handling to occasional although the record does not support any impairment that would be expected to affect his upper extremities. The source concludes that the testing is reliable but notes two positive Waddell's signs (with 3 or more indicating poor reliability), poor psychodynamics, and some self-limiting behaviors which were believed to be justified. These findings do cast at least some doubt on whether full effort was made, particularly in light of other findings in the record. The suggested limitation to "avoid" stooping is not consistent with the indicated ability to sit 76% of the day, as one must stoop to at least some extent in order to sit. More importantly, many functions were untested (such as lifting and carrying) because on this date the claimant's blood pressure was found to be out of control. The record indicates that he had stopped taking his blood pressure medication and had not restarted them until three days after this functional capacity evaluation (11F/8), and so a question is raised as to how his uncontrolled blood pressure may have impacted his performance and the results with the prevention of full testing. I give little weight to the conclusion that he would be unable to tolerate a full shift, as this is not explained, and his

7

sitting/standing/walking tolerances in total add up to more than 8 hours. Overall, partial weight is given to this opinion evidence to the extent this supports the ability to perform a range of sedentary exertional level work and a preclusion to kneeling and crawling, but otherwise it is given little weight.

(R. at 22–23.)

The undersigned finds that the ALJ did not commit reversible error in connection with her consideration and weighing of Ms. Bockrath's opinions. The ALJ properly considered that that Ms. Bockrath was a one-time examining, non-treating occupational therapist and reasonably discounted her opinions based upon (1) demonstrated inconsistencies between Ms. Bockrath's opinions and the record evidence (*e.g.*, noting that the record evidence did not support many of the opined limitations, such as the handling and reaching limitations,[3] while other opined limitations—such as the inability to climb stairs—were undermined by treatment notes or directly contradicted by Plaintiff's own testimony that he climbs stairs 20-25 times per day, (R. at 45-46))[4]; (2) internal inconsistencies (*e.g.*, opining that Plaintiff was unable to stoop[5] even though Ms. Bockrath observed Plaintiff sitting and had opined that he could sit for significant periods); and (3) and the lack of supportability of aspects of her opinion (*e.g.*, Ms. Bockrath's statement, without explanation, that Plaintiff was unable to tolerate an eight-hour shift, notwithstanding her acknowledgement that she was unable to test his endurance, her opinion that Plaintiff could perform at the sedentary demand level, and Plaintiff's own self reports that he could sit/stand/walk for a total of 8 hours per day). Moreover, the ALJ reasonably concluded that Plaintiff's uncontrolled blood pressure during Ms. Bockrath's examination—which was

---

[3](*See* R. at 308, 311, 313 (noting no symptoms in Plaintiff's arms)).
[4]The ALJ also noted the inconsistency between Plaintiff's presentation of a "significant antalgic gait" with other treatment records reflecting normal gait. (*See* R. at 315, 323, 369 (noting a normal gait)).
[5]*See* SSR 83-14 ("defining "stooping" as "bending the body downward and forward by bending the spine at the waist").

8

attributable to the fact that Plaintiff stopped taking his blood pressure medication before the examination and then restarted that medication three days after the examination—could have impacted his performance and prevented full testing. Indeed, Ms. Bockrath acknowledged that she was unable to perform numerous tests due to Plaintiff's blood pressure and opined that Plaintiff had potential for improvement with proper blood pressure medications. (R. at 355, 357.)

Although Plaintiff does not directly challenge the ALJ's consideration of the state agency reviewing physicians' opinions, he complains that after they rendered their opinions, the record evidence documents a worsening of Plaintiff's symptoms. (*See* Pl.'s Statement of Errors, ECF No. 20 at PAGEID # 669.) Significantly, however, the ALJ accorded the state agency reviewing physicians' opinions only "partial weight," and determined that Plaintiff's RFC was *more restrictive* than the state agency physicians opined. In finding Plaintiff to be *more* limited than the state agency physicians opined, the ALJ credited Plaintiff's complaints of pain, balance issues, and fatigue; considered Plaintiff's treatment records reflecting a decreased range of motion in Plaintiff's lumbar spine and abnormal testing at times; and considered the side effects of Plaintiff's medications.

In summary, the undersigned concludes that the ALJ reasonably considered and weighed Ms. Bockrath's opinion and that substantial evidence supports her RFC determination and decision denying benefits. It is therefore **RECOMMENDED** that Plaintiff's sole contention of error be **OVERRULED**.

## V. DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is

**RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and that the Commissioner's decision be **AFFIRMED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

        /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE